NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 22, 2007[*]
Decided April 25, 2007

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-3679

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 05 CR 24 |
| CORTLAND A. SHELLY, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge.* |

O R D E R

Cortland Shelly pleaded guilty to possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). At sentencing, Shelly made no objection to the district court's sentencing guidelines' calculation. Shelly now contends that contrary to *United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005), a sentence within the applicable guidelines is not automatically reasonable. He also

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

contends that the 100:1 weight calculation disparity between cocaine base and powder cocaine in the guidelines is unreasonable. *See* U.S.S.G. § 2D1.1. We affirm.

In 2005 Shelly arranged to sell powder cocaine and cocaine base to a confidential informant. But once Shelly met the informant, Drug Enforcement Agents identified themselves and tried to arrest him. Shelly fled in his car, knocking one agent off his feet and running over another's foot in the process. Shelly stopped the car and attempted to flee on foot. The agents caught him and recovered 72 grams of crack cocaine, 59.8 grams of powder cocaine, 8 grams of marijuana and drug paraphernalia from his jacket and car. Shelly subsequently pleaded guilty to possession with intent to distribute 50 or more grams of cocaine base, 18 U.S.C. § 841(a)(1).

The district court adopted all of the recommendations in the pre-sentence report at sentencing. The PSR used the drug equivalency table in the Sentencing Guidelines, which has a 100:1 crack to cocaine ratio, to conclude that Shelly's relevant conduct included 1,452 kilograms of marijuana. As a result, Shelly's base offense level was 32. The PSR also recommended a six-level upward adjustment under U.S.S.G. § 3A1.2(c)(1) because Shelly struck DEA agents when he fled in his car. Finally, the PSR recommended a three-level decrease under U.S.S.G. § 3E1.1 because Shelly accepted responsibility by pleading guilty. As a result, Shelly's total offense level was 35 and his criminal history category was III. The recommended guideline range for that level and category was 210-262 months' imprisonment.

At sentencing, Shelly did not object to the PSR's guidelines calculations nor did he provide any other argument why the court should impose a sentence below the guidelines range. Instead, Shelly's attorney asserted only that "I don't know how much sense 210 months' confinement makes," and asked the court to impose a sentence that would still give Shelly "any sense of hope." Finally, Shelly made no objection to the harsher consequences the guidelines gave cocaine base. The government, for its part, asked the court to impose a sentence at the top end of the guidelines range.

The district court evaluated a number of factors to determine the appropriate sentence for Shelly, including his upbringing, age, prior convictions, drug addiction, and flight from law enforcement. First the court noted that although Shelly was only 22, he already had seven prior convictions. The court also referred to Shelly's "very serious substance abuse problem," for which he refused help, and the fact that Shelly had injured the DEA agents when he struck them with his car. In doing so, the court acknowledged that a sentence at the high end of the range would be appropriate but Shelly's youth persuaded him that the low end would still "hold [Shelly] accountable" and "reflect the seriousness" of his conduct. The court then sentenced Shelly to the low end of the guidelines range, 210 months' imprisonment. *See* 18 U.S.C. § 3553(a)(1), (a)(2).

On appeal Shelly challenges this court's holding that sentences correctly calculated under the guidelines are presumptively reasonable. *See Mykytiuk*, 415 F.3d at 607-08. Shelly points out that *Mykytiuk* conflicts with the First, Second, Third, and Eighth Circuit's holdings that a sentence within the appropriate guidelines range is not entitled to a presumption of reasonableness. *See United States v. Fernandez*, 443 F.3d 19, 27-28 (2d Cir. 2006); *United States v. Jimenez-Beltre*, 440 F.3d 514, 516-19 (1st Cir. 2006); *United States v. Cooper,* 437 F.3d 324, 331-32 (3d Cir. 2006); *United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005). Although the Supreme Court recently granted a writ of certiorari in *Rita v. United States*, cert. granted, ___ U.S. ___, 127 S.Ct 551, ___ (2006), to consider whether according a presumption of reasonableness to a within-guidelines sentence is consistent with *United States v. Booker*, 543 U.S. 220 (2005), the resolution of that case would not affect the conclusion that the district court here arrived at a reasonable sentence after meaningful consideration of the sentencing factors in § 3553. *See United States v. Gama-Gonzalez*, 469 F.3d 1109, 1111 (7th Cir. 2006). Judge Crabb considered the factors for leniency or harshness under § 3553(a)(1)—Shelly's youth, criminal history, drug addiction—and those factors reflecting the seriousness of the conduct—Shelly's flight and the officers' injuries—as well as a need for deterrence, *see* § 3553(a)(1) and (2). Because the district court considered the factors outlined in § 3553(a) and adequately explained her reasons for imposing a sentence at the low end of the guidelines range, Shelly's sentence is reasonable. *See United States v. Jung*, 473 F.3d 837, 844-45 (7th Cir. 2007).

In a similar vein, Shelly argues that the district court "may" have imposed the guidelines because she mistakenly believed they were presumptively correct. This would be wrong, Shelly argues, because it would require him to rebut the presumption of reasonableness during sentencing and not during appeal. This court's recent decision in *Gama-Gonzales*, directly precludes this argument, however; it holds that the presumption of reasonableness means only that district courts may follow the guidelines without acting unreasonably. 469 F.3d at 1111.

And finally, Shelly's only argument for why his sentence is unreasonable is the disparity between crack and powder cocaine set forth in the guidelines. He raises this argument for the first time on appeal and does not argue why the disparity is unreasonable. In any event this court has repeatedly held that a sentence based on that disparity is not unreasonable, *see e.g., United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005), and judges must abide by the disparity when calculating the range even if they take issue with it, *see United States v. Wallace*, 458 F.3d 606, 611 (7th Cir. 2006); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006).

AFFIRMED